IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| SUSAN J. HYLTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00067 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| CAROLYN COLVIN, | ) | By: Hon. Jackson L. Kiser |
| Acting Commissioner, | ) | Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R&R") of the United States Magistrate Judge recommending that I grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and affirm the final decision of the Commissioner. The R&R was filed on February 9, 2015, and Plaintiff Susan J. Hylton ("Plaintiff") filed objections on February 26. The Commissioner did not respond in any fashion, and the matter is now ripe for review. See Fed. R. Civ. P. 72(b). After careful review and consideration, and for the reasons stated below, I will overrule Plaintiff's objections, adopt the R&R of the Honorable Joel C. Hoppe, grant the Commissioner's Motion for Summary Judgment, deny Plaintiff's Motion for Summary Judgment, and affirm the final decision of the Commissioner.

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 10, 2011, Plaintiff filed an application for a period of disability insurance benefits pursuant to Title II of the Social Security Act ("the Act"), and supplemental security income pursuant to Title XVI. See 42 U.S.C. §§ 401–433, 1395−1395ccc. (See R. 250–273.) In her application, Plaintiff alleged that she had been disabled since February 18, 2010, due to a combination of: a bulging disc in her back; osteoarthritis; irritable bowel syndrome; borderline

- 1 -

osteoporosis; bone spurs; high cholesterol; and having a rib removed. (See, e.g., R. 60–61; 69–70.) The Commissioner denied Plaintiff's claims initially on May 31, 2011, and again upon reconsideration on October 25, 2011. (See R. 60–77, 80–101.)

On July 25, 2012, Plaintiff appeared with her attorney before Administrative Law Judge Drew A. Swank ("the ALJ"). (R. 25.) Only Plaintiff testified at the hearing. (R. 27–43.) In a written decision dated August 13, 2012, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. (See generally R. 9–20.) He found that Plaintiff had the following severe impairments: "ostepenia, degenerative disc disease of the cervical and lumbar spines, osteoarthritis of the left hip, knee, and foot, and left-sided neurogenic thoracic outlet syndrome." (R. 11 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) ALJ Swank found that Plaintiff did not have an impairment or combination or impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

After consideration of the entire Record, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with some limitations. (R. 14–15.) Specifically, the ALJ determined that Plaintiff "cannot perform repetitive gripping, grasping, pushing, pulling or overhead work with the left upper extremity, can only occasionally climb and kneel but must avoid crawling, and must avoid heights and hazards." (R. 15). The ALJ determined that Plaintiff was capable of performing past relevant work as a retail manager, nanny, and store clerk, and that those positions did not implicate any of the work-related limitations of Plaintiff's RFC. (R. 19–20 (citing 20 C.F.R. §§ 404.1565, 416.965.) Accordingly, he concluded that Plaintiff was not disabled within the

meaning of the Act. (R. 20.) The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner on September 25, 2013. (R. 1–3.)

On November 18, 2013, Plaintiff filed suit in this Court to challenge the final decision of the Commissioner. (Compl. [ECF No. 1].) Pursuant to 28 U.S.C. § 636(b)(1)(B), I referred the case to the United States Magistrate Judge for consideration. Plaintiff and the Commissioner filed cross-motions for summary judgment. (Pl.'s Mot. Summ. J., Aug. 8, 2014 [ECF No. 16]; Def.'s Mot. Summ. J., Oct. 1, 2014 [ECF No. 20].) On February 9, 2015, Judge Hoppe filed his Report and Recommendation, recommending that I affirm the final decision of the Commissioner. (R&R, Feb. 9, 2015 [ECF No. 24].) On February 26, 2015, Plaintiff filed objections to the R&R. (Pl.'s Obj., Feb. 26, 2015 [ECF No. 25] [hereinafter "Pl.'s Obj."].) The Commissioner did not respond, and the matter is now ripe for review.

## II.     STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. See 42 U.S.C. § 405(g) (2014); Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545 (2014); see Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (noting that it is the role of the ALJ, not the vocational expert, to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927 (2014). Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. See id. §§ 404.1527(e), 416.927(e); Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. Laws, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary," Mastro, 270 F.3d at 176 (quoting Craig, 76 F.3d at 589), or the secretary's designate, the ALJ, Craig, 76 F.3d at 589 (quoting Walker, 834 F.2d at 640).

### III.  DISCUSSION

Plaintiff's first objection goes to the extent of the ALJ's consideration of the state agency physicians' opinion that Plaintiff can "only reach in front and to the side with her left arm . . . ." (Pl.'s Obj. pg. 1.) Plaintiff contends that the ALJ failed to consider these opinions and, therefore, there is no basis in the Record to reject them. Additionally, she contends that the Magistrate, in concluding that the ALJ *did* consider this opinion, created a "logical bridge" that the ALJ omitted. (Id. pgs. 2–3.)

I certainly agree with Plaintiff that it is not this Court's province to perform functions the ALJ failed to do. See Callaway v. Colvin, Case No. 7:13CV00287, 2014 U.S. Dist. LEXIS

99645, at *13 (W.D. Va. July 22, 2014). However, a plain reading of the ALJ's opinion establishes that he *did* consider and reject portions of the state agency's physicians' opinions. In his written decision, the ALJ stated:

> As for the opinion evidence, the undersigned [the ALJ] recognizes that the state agency physicians who evaluated the evidence of record regarding the claimant's physical impairments concluded that the claimant was capable of performing work at the light exertional level. . . . The undersigned notes that these physicians provided greater restrictions regarding postural maneuvers. However, other than reports of limitations with cervical and lumbar range of motion secondary to pain on one occasion, the documentary evidence does not support such limitations.

(R. 18 (citing R. 324–27).) By his own words, the ALJ considered the opinions of the state agency's physicians regarding Plaintiff's "postural maneuvers," but rejected them because, with the exception of one occasion, Plaintiff never complained of having the problems identified by the state agency physicians.

"[A] point-by-point articulation of each inconsistency [between the treatment notes and a treating physician's opinion as to a claimant's functional capacity] is not required for the court to understand the ALJ's reasons for weight given the opinion." Thompson v. Colvin, Case No. 7:13CV00032, 2014 WL 4792956, at * 3 (W.D. Va. Sept. 25, 2014) (quoting Hawley v. Colvin, Case No. 5:12-CV-260-FL, 2013 WL 6184954, at *4 (E.D.N.C. Nov. 25, 2013)). The same is true when considering the opinion of a reviewing physician. In the present case, the ALJ adequately explained the deficiencies in the state agency physicians' opinion (see R. 18), and succinctly explained the reasons for rejecting their opinions regarding Plaintiff's postural limitations. There is substantial evidence in the Record to support the ALJ's determination of Plaintiff's RFC, and the objection will be overruled.

Plaintiff next takes issue with the Judge Hoppe's conclusion that the ALJ properly considered and rejected Nurse Lange's opinion. First, Plaintiff asserts that Nurse Lange is a "clearly a treating source and the correct analysis is whether or not she is an acceptable or non-acceptable medical source under the regulations." (Pl.'s Obj. Pg. 4.) As a matter of first principles, "only 'acceptable medical sources' can be considered treating sources as defined in 20 C.F.R. 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). "Acceptable medical sources are . . . licensed physicians . . . licensed or certified psychologists . . . licensed optometrists . . . licensed podiatrists . . . and qualified speech-language pathologists . . . ." 20 C.F.R. § 404.1513(a). Thus, it is clear that Nurse Lange is not an "acceptable medical source," and therefore she cannot be considered a "treating source."[1] I find no merit in Plaintiff's argument that Nurse Lange is a "treating source." This conclusion, however, does not alter the rule that a non-acceptable medical source's opinion can overrule the opinion of a treating source (see Pl.'s Obj. pg. 4); if the treating source's opinion is not supported by substantial evidence in the Record but the non-acceptable medical source's is, then the opinion that has been afforded less weight will nevertheless prevail. See, e.g., SSR 06-03P, 2006 WL 2329939, at *5.

Regardless of the labels given to Nurse Lange, "the ALJ is required to at least consider the opinion of a non-acceptable medical source . . . especially when . . . the non-acceptable

---

[1] Plaintiff's erroneous conclusion on this point likely stems from the fact that "treating source" is a term of art under the Act. While Nurse Lange is certainly a "source" and most definitely "treated" Plaintiff, a "treating source" is merely an "acceptable medical source" whose opinion is entitled to controlling weight. See 20 C.F.R. § 404.1527(c)(2). Plaintiff accidentally concedes that Nurse Lange is not a treating source when she argues that "Nurse Lange is considered a non-acceptable medical source under the Regulations . . . ." (Pl.'s Obj. pg. 4.) As stated above, "only 'acceptable medical sources' can be considered treating sources", SSR 06-03P, 2006 WL 2329939, at *2, and thus if Nurse Lange is a non-acceptable medical source, she cannot be a treating source.

- 6 -

Case 4:13-cv-00067-JLK-JCH   Document 26   Filed 07/17/15   Page 6 of 13   Pageid#: 529

medical source had a lengthy relationship with the claimant and can present relevant evidence as to the claimant's impairment or ability to work." Hall v. Colvin, Case No. 7:12CV00327, 2014 WL 988750, at *8 (W.D. Va. Mar. 13, 2014). "Social Security Ruling 06-03P clarifies that, '[a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these 'other sources,' . . . *when such opinions may have an effect on the outcome of the case.*'" Adkins v. Colvin, Case No. 4:13CV00024, 2014 WL 3734331, at *3 n.7 (quoting SSR 06–03P, 2006 WL 2329939, at *6) (emphasis in original). See also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in the ALJ's failure to weigh expressly the opinion of the plaintiff's physical therapist who only saw the claimant on one occasion).

Plaintiff objects to Judge Hoppe's conclusion that a "gap in treatment and the completion of the medical source statement was a proper basis for the ALJ to reject Nurse Lange's opinions." (Pl.'s Obj. pg. 4.) It is important to note that Nurse Lange treated Plaintiff for nearly two years, but over a year passed[2] between Nurse Lange's last treatment note and when she opined on Plaintiff's level of functioning. (See R. 330 (treatment note dated June 30, 2011); R. 388–94 (medical opinion dated July 12, 2012).) Generally speaking, a year gap between treatment and opinion is a sufficient rationale to reject an opinion. See Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("Dr. Templeman's opinion was communicated a year after his last treatment of Ms. Mastro.").

Plaintiff contends that the ALJ "simply rejected Nurse Lange's opinions based on the gap without properly considering all the other factors to be considered when weighing a medical source's opinion." (Pl.'s Obj. pg. 4.) The factors to be considered when weighing a medical

---

[2] Melissa Smith, FNP, filed a treatment note dated July 20, 2012. (R. 331–33.)

- 7 -

Case 4:13-cv-00067-JLK-JCH   Document 26   Filed 07/17/15   Page 7 of 13   Pageid#: 530

opinion are: examining relationship; treatment relationship; length of the treatment relationship and the frequency of examination; mature and extent of the treatment relationship; supportability; specialization; and other factors. See 20 C.F.R. § 1527(c).

Plaintiff's objection ignores a detailed justification for rejecting Nurse Lange's opinion. The ALJ stated that Nurse Lange's opinion was not entitled to controlling weight for a variety of reasons. First, Nurse Lange's opinion was rejected because "the diagnostic and physical examinations have not revealed any disabling findings." (R. 19.) Second, the ALJ stated that Plaintiff's "history of treatment and lack of any ongoing treatment by a physician who specializes in musculoskeletal impairments in addition to lack of any therapy or surgery since allegedly becoming disabled is inconsistent with an individual experiencing disabling symptoms." (Id.) Third, the ALJ noted that Plaintiff's "medication regimen" did not include "narcotic or analgesic pain medication," and that Plaintiff's pharmacological regimen "is inconsistent with an individual experiencing severe pain." (Id.) Fourth, ALJ Swank concluded that Plaintiff's "activities of daily living are inconsistent with an individual who is unable to perform work at the light exertional level." (Id.)

Rather, Plaintiff argues that, during the one-year gap in treatment, Nurse Lange had access to Plaintiff's treatment records "with these other providers" and was therefore "well aware of [P]laintiff's impairments and resulting limitations . . . ." (Pl.'s Obj. pg. 5.) Even if that is true (and there is no evidence in the Record that Nurse Lange maintained control over Plaintiff' medical records with other physicians), the Record does not support the severe functional limitations Nurse Lange imposed on Plaintiff. Nurse Smith referred Plaintiff to Dr. Robert Cassidy, an orthopedic surgeon, during the one-year gap in treatment. (See R. 332.) Dr. Cassidy did not consider Plaintiff a candidate for surgery, but instructed Plaintiff to continue

taking non-narcotic pain medication, enroll in physical therapy, and return in one month. (R. 325–26.) Plaintiff did not return and, contrary to her argument now, did not seek healthcare from any other provider before she approached Nurse Lange to submit an opinion on her level of functioning. (See R. 324–27.) The Record amply supports the ALJ's decision to reject Nurse Lange's opinions regarding Plaintiff's functional limitations.

Plaintiff contends that the ALJ ignored or improperly rejected findings and diagnostic results in the Record. She contends that the ALJ ignored diagnostic findings of osteoarthritis, spondylosis, and multilevel degenerative disc disease. (Pl.'s Obj. pg. 5.) This argument is meritless, since the ALJ held that Plaintiff suffered from osteoarthritis and degenerative disc disease of the cervical and lumbar spine. (R. 11.) He also concluded that these disorders "are not slight and have more than a *de minimis* effect on the claimant's ability to perform basic work activities." (R. 12.) Thus, the Record is not only clear that the ALJ considered Plaintiff's osteoarthritis and multilevel degenerative disc disease, but that he found Plaintiff actually *suffered* from these impairments.

Plaintiff next asserts the a 2009 bone scan and MRI revealed degenerative changes that supported Nurse Lange's ultimate opinion on Plaintiff's functional limitations. It is clear that the ALJ considered these tests. He expressly referenced both tests, but found that subsequent self-reporting and diagnostic testing indicated that the degenerative changes shown in these tests were minor. (See R. 16.) Additionally, subsequent to these tests, Plaintiff exhibited 5/5 motor strength in her lower extremities and a normal gait. (R. 303.) Thus, Plaintiff's objection (which is far from a model of clarity) is not to the fact that the ALJ ignored the testing or even that he did not discuss it; clearly he did both. Rather, when the Record is reviewed, the most that can be said is that she disagrees with the ALJ's conclusion. The ALJ's decision, however, is supported

substantial evidence in the Record, and the objection will be overruled.  See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987) ("Neither the district court nor this court may reweigh the evidence.  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." (citing Delgado v. Bowen, 782 F.2d 79, 82–83 (7th Cir. 1986); Stephens v. Heckler, 766 F.2d 284, 287–88 (7th Cir. 1985))).

Plaintiff next objects to the ALJ's conclusion that "non-narcotic medication, muscle relaxers, heat, and exercise prescribed by Nurse Lange to treat [P]laintiff's impairments was 'routine and conservative' and properly provided a basis for the ALJ to reject Nurse Lange's opinions."  (Pl.'s Obj. pg. 6.)  "There exists no bright-line rule between what constitutes 'conservative' versus 'radical' treatment."  Gill v. Astrue, Case No. 3:11CV85-HEH, 2012 WL 3600308, at *6 (E.D. Va. Aug. 21, 2012).  When considering a treatment regime in relation to other factors, such as a claimant's subjective allegations of pain, the ALJ is required by the applicable regulations to consider "what medications, treatments or other methods [the claimant] use[s] to alleviate" her pain, as well as the "type, dosage, effectiveness, and side effects on any medication."  20 C.F.R. 414.1529(c)(3), (c)(3)(iv).  Plaintiff counters that "not every impairment is amenable to surgery," and that Dr. Cassidy opined that Plaintiff's impairments "are not impairments to be treated with surgery . . . ."  (Pl.'s Obj. pgs. 6–7.)

Again, Plaintiff objects to the ALJ's conclusion, not his methodology.  The ALJ considered and discussed Plaintiff's medication and treatment regime (see R. 17–18), and reasonably concluded that they were incompatible with a person who complained of pain at the level and persistence claimed by Plaintiff.  The ALJ's rationale is certainly a permissible reason for rejecting the opinion of a non-acceptable medical source like Nurse Lange.

Moreover, Plaintiff is simply wrong that "Plaintiff's degenerative conditions and muscle spasms are not impairments to be treated with surgery as noted by orthopedic surgeon Dr. Robert Cassidy." (Pl.'s Obj. pgs. 6–7.) Dr. Cassidy does not state *in any fashion* that Plaintiff's impairments, regardless of their severity, cannot be treated by surgery. (See R. 324–27.) He simply stated that Plaintiff was on the correct treatment regime for her impairments. This conclusion is buttressed by his recommendation that Plaintiff return in a month (see R. 325), a recommendation she did not heed. No fair interpretation of Dr. Cassidy's records supports Plaintiff's argument.

Plaintiff also disagrees with the ALJ's conclusion that Plaintiff's self-reported activities of daily living are inconsistent with Nurse Lange's functional limitations and therefore justifies rejecting Nurse Lange's opinion. She also contends that the ALJ "erred in equating the ability to perform a few household chores sporadically during the week with working on a sustained basis eight hours per day and five days per week." (Pl.'s Obj. pg. 7.) It is well-settled that an ALJ may discount any medical opinion of a claimant's functional limitations when that opinion is inconsistent with the claimant's daily activities. See Dennison v. Astrue, Case No. 5:10-cv-109, 2011 WL 2604847, at *2 (W.D. Va. July 1, 2011) (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)). After a review of the Record, there is substantial evidence to support the ALJ's decision that Plaintiff's activities of daily living are inconsistent with Nurse Lange's more restrictive limitations. (Compare R. 17, with R. 388–89.) Plaintiff reported that she performs household chores on a regular basis, shops, cares for pets, needs no help caring for herself, and occasionally drives. (R. 18, 37–38, 220-226.) These activities are at odds with Nurse Lange's opinions and justify rejecting her conclusions. Accord Doll-Carpenter v. Comm'r of Soc. Sec., Case No. 4:11-cv-00028, 2012 WL 5464956, at *6 (W.D. Va. May 7, 2012).

When I consider the Record as a whole, none of Plaintiff's objections relating to Nurse Lange's opinions carries the day. Therefore, Plaintiff's objections regarding the ALJ's treatment of Nurse Lange's opinions will be overruled.

Plaintiff next objects to Judge Hoppe's conclusion that substantial evidence supports the ALJ's credibility finding. The ALJ concluded that Plaintiff's activities of daily living belie her claim that she is totally disabled, and that the medical evidence does not support the limitations she claims. In seeking to overturn those decisions, Plaintiff repackages her objection from earlier regarding her activities of daily living and the objective medical evidence. As stated above, however, there is substantial evidence in the Record to support the ALJ's decision on those two points. Plaintiff will not prevail by simply repurposing her arguments regarding Nurse Lange and applying them against the ALJ's decision as a whole. The objection will be overruled.

Finally, Plaintiff objects to the ALJ's reliance on Vocational Expert ("VE") testimony from a prior claim filed by Plaintiff. She asserts that the ALJ relies on the VE's testimony from her prior appeal in order to conclude that Plaintiff's RFC did not preclude her from gainful employment. Because, as stated above, the ALJ's RFC determination was supported by substantial evidence, and because the ALJ's RFC in this case was the "same exact" RFC as determined in the prior appeal, reliance on the VE's testimony from the prior appeal was proper. The hypothetical encompassing Plaintiff's limitations listed the same limitations as ALJ Swank determined in the present case. Nothing precludes the ALJ from relying on evidence from Plaintiff's prior appeal. See, e.g., Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (finding that "the third ALJ's examination of the conflicting vocational expert testimony from the two prior hearings was appropriate"); Patton v. Astrue, Civil Action No. TMD 10-3007, 2013 WL

459771, at *3 (D. Md. Feb. 6, 2013) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making his determination."); Naudin v. Apfel, 119 F. Supp. 2d 812, 818 (C.D. Ill. 2000) ("[A]n ALJ may properly rely upon evidence presented at a prior hearing in making his determination."); Woolf v. Sullivan, Case No. 89-1427C(5), 1992 WL 533050, at *7 (E.D. Mo. Oct. 19, 1992) (finding that substantial evidence existed for the ALJ's conclusion based upon the VE's testimony at a prior hearing). Because the RFC from the prior appeal was identical to the RFC determined by ALJ Swank in the present case, the VE's testimony was relevant and sufficient to support ALJ Swank's conclusion. Because substantial evidence supports his decision, the objected will be overruled.

### IV. CONCLUSION

Because substantial evidence support the ALJ's decision with regards to Plaintiff's RFC, Nurse Lange's opinion, Plaintiff's credibility, and the prior testimony of a VE, Plaintiff's objections will be overruled. I have reviewed the remainder of the Record for clear error and, finding none, will adopt the Report and Recommendation in its entirety and grant the Commissioner's motion for summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record as well as to Magistrate Judge Hoppe.

ENTERED this 17th day of July, 2015.

s/Jackson L. Kiser  
SENIOR UNITED STATES DISTRICT JUDGE
